Good morning, Your Honors. Donald Cook for the Plaintiff, Jerome Clemmons. June 28, 2004, Sheriff's Department takes custody of Mr. Clemmons. When they take custody of Mr. Clemmons, they have the official documentation establishing that he's not the James Clemmons. Counsel, this is really troubling. A guy spending three weeks in jail when it was somebody else's name on the arrest warrant. Just the wrong guy. Why didn't his lawyer mention it at the arraignment? Well, Mr. Clemmons testified he wasn't representing at the arraignment. Mr. Clemmons testified. Pardon? Mr. Clemmons testified he had no representation. He did not have a lawyer at arraignment. Correct. His testimony was, I'm taken to the courthouse. I'm in a holding cell. Sheriffs then take me from the holding cell to the county jail. I never appeared before any judge. When you read the transcript of the proceeding. It was a video arraignment? No. It was just, there's less than 20 words spoken. The judge says basically Clemmons' case, Mr. Montgomery, presumably a public defender assigned to the court, says we're going to need a probation report. And the judge says. So he did have a lawyer. He had a public defender. I'm saying all the transcript shows. Did he have a lawyer or not? He says he testified he did not. There is a public defender. There must be a record. And the record must establish. People stand up and say John Doe for Mr. Clemmons. The transcript in this case does not reflect that. The minute order states that Mr. Montgomery was Mr. Clemmons' lawyer. The minute order also states that the defendant is present in court. That is not reflected in the reporter's transcript. And Mr. Clemmons testified I never went before any judge. I was just in the courthouse, in the holding cell, then I'm taken to county jail. So you look at the reporter's transcript. He says they didn't even take him upstairs to the court. Correct. He never went before a judge. That's his testimony. But, I mean, all of us that have been trial judges and you have a clerk sitting next to you and they show an appearance for someone and they show a lawyer, that just doesn't. Well, it depends if, I suppose, if you spent time in the Long Beach Superior Court, one of the busier courts, they process a lot of people, in any event. Isn't there, isn't there, I mean, my sense is when you're in these arraignment situations, you've got a public defender who's sitting there and does everybody and you've got a prosecutor who's assigned to that court who does everybody. Sure. It's a stack of files on both. He had a lawyer, but he didn't have, I mean, it wasn't necessarily the best representation or anyone who knew him. Right. I mean, you're correct. Stack of files at either end of the tables. Mr. Clemens. So he had a lawyer, a public defender. You're just saying the public defender hadn't met with him beforehand. What I'm saying is what Mr. Clemens testified to and I'm acknowledging what is stated in the minute order and I'm saying what the reporter's transcript shows. The reporter's transcript, as I say, it's very brief, less than 20 words, and it's obvious that the judge thinks that the prisoner number 817-whatever is supposed to be the defendant. How come your client didn't say anything right then? First of all, my client says I was never before the judge. That's his testimony. What he says is I told the Long Beach people, the ones who arrested him, you've got the wrong guy. Okay, so he says he's never before the judge, but then we have a minute order that says he was before the judge and that he has a lawyer. He says he never had a lawyer. And then he says he told people, and then they also say that they have a log where they report anything if anyone says that. He doesn't happen to be on the log. So you have a lot of official records that don't support your position. But that being said, under Minnell, the cases that you say are that you rely on are Fairley and, I think, Fairley versus Luman and Oviatt versus Pierce, right? Two of the cases, yes. And in both of those cases, the only policy they had was inaction. Here we have in the record, I mean, they do have a policy, and it shows that some over 2,000 people were processed under that. So what is the policy of inaction here? I don't see that in this case. The policy evidence, if I can just go directly to what is the most dispositive policy evidence in this case, is the testimony of the county's designated agent, Cheryl Mosse, testifying under Rule 30b-6. She looks at this file. She says he was processed according to policy. If we had to do this again, we'd do it the exact same way. You ask Mr. Beach, and they'll tell you we'll do it the exact same way. And I mention that because all you have to do is read the official documentation that they had. Do what Michael June, the county probation officer, did on June 12th. He got this file. He looked at it. He says, hey, he's the wrong guy. The CII numbers don't match. The birthdates are different. He's not the guy. That's all that needed to be done. You want to know why this happens? It happens because, and this is from the testimony of Captain Richard Berantes, at the time captain of Inmate Reception Center where prisoners are processed. Now he's assistant sheriff, I think. He says, look, if an outside agency says that's the person, we're not going to dispute it. You know, it's a terrible consequence, but I can't see the constitutional issue. I can see all kinds of State tort claims. But it looks as though the county had a policy to try to do something about these wrongful detentions. It wasn't perfect, but no policy ever is. And under Monell, what you have to prove is not that they didn't have the best possible policy. You have to prove they had a policy of committing constitutional violations, which it looks to me as though what they had was a level of perhaps sloppiness, but no policy to commit constitutional violations. And then you've got a judge saying lock them up, which leaves everybody with no alternative but to lock them up. I think it's probably fairly common knowledge with people within the law enforcement or the criminal justice system is that courts and judges are not investigative agencies. They're not detectives. They rely on the police to tell them. Yeah, but the police, I mean, what they've got is he says you've got the wrong guy, but a very high number of people arrested say you've got the wrong guy. I'm not referring to that. What I'm referring to is that the courts rely on the police to identify the people. Bring me the right body, in other words. True. What we have here is the official documentation screamed from the face of it that this was not the right person. When was there a time when somebody had the arrest warrant in his hands naming one guy who was different height and weight and plainly not this guy, and the guy in front of them at the same time and said, this isn't the guy, but I don't care, lock him up anyway. June 28th, 2004, and we know that from the deposition testimony of the designated agent, Sergeant Massey. That documentation was given to the sheriff's department when they took possession of the body. What happened June 28th? June 28th is when he's taken from the Long Beach jail into the county courthouse lockup and put into the custody of sheriff's department, and then he's transported to county jail. And who had what in his hands? The Long Beach police gave the sheriff's department the documentation. That would be the warrant abstract, the identification that Long Beach had performed. I don't know what a warrant abstract is. They have something showing the name and the height and weight. I'm sorry. The warrant abstract and the record at page 210 has the named identifying numbers on it. They also had, and this is in the record at page 202, 203, the Long Beach documentation, even though it shows L.A. County booking record, and it has the identification information as to who Mr. Jerome Clemens is. And you look at identification information on this documentation, you look at the warrant abstract, he's not the guy. This is what Michael June did on June 12th. I guess the way I see it, so the county says, oh, we have a policy, and it's a constitutional policy. They have this disputed warrant. Disputed warrant verification. And what your argument is, yes, they have that policy, but they don't follow it as another policy. I know that's one person, Nassie, who says that. It's not just one person, Your Honor. That's the county's designated agent. I'm trying to get at what's the disputed policy. You're not saying that the dispute, the warrant verification policy that they have is unconstitutional and caused your client's injury. You're saying the informal policy that they file, actually follow, is what caused the injury. Correct. Correct. And that informal policy, they're not going to second-guess any outside agency's determination, no matter how plain it is. From the records they receive, establishing the identity of prisoners, they're not going to second-guess it. They're going to let a court tell them, require a court to tell them to cut the person loose. So in this case, though, did your client ever say to the Sheriff's Department, you got the wrong person? Yes. Was the dispute, the warrant dispute verification policy that actually is written, was that then triggered? No. It was go tell it to the judge, quote, unquote. That was his testimony. He also submitted the testimony of other individuals who also made the same complaint, and there's no record showing up that they ever performed this disputed warrant verification procedure. And then there was my declaration where I went through all the instances of wrong persons being released from custody, per the Sheriff's Department, and there's no record of ever there being a disputed warrant verification procedure initiated with these people. Did they have some procedure of asking the guy what his name is? Probably as part of the booking process. And my client told him, Jerome Clemens. They just put down on their records, James Clemens, but we're booking him as Jerome Clemens because he still insists on being just Jerome Clemens. And when he tells the people at the county jail he's not the right person, he's told, go tell it to the judge. He tells Michael June he's not the right person. That's the probation officer. Michael June reads the paperwork and he says, gosh, he's not the right person. That's on June 12th. The county doesn't go to the court. How many days had he been in prison by then? By that time, about 16, 17 days. My point is when the jailer knows that, look, it's the wrong person, for whatever the reason, the court has it wrong, the jailer at least has an obligation to tell the judge, because everyone knows that the judge is relying on the police, tell the judge that this guy is not really the guy that you want to hold in custody. Could the sheriff or sheriff's representative, how would he get to a judge? I mean, you would have to call a prosecutor and say this is the wrong person. Sergeant Mosse in her deposition, she says, yeah, we just contact the court and says he's the wrong person. And we cut him loose even. I mean, she said he should have been cut loose. So it's not a problem for them to go to a judge. I mean, what's really going on here. It's not a problem for them, but the issue is whether it's a problem, I guess, for Jerome Leslie Clements to get to see a judge. Correct. It is a problem. I mean, all he can do is tell the sheriff I'm not the guy. The sheriff won't read their paperwork, which if they do, it's obvious he's not the guy. And to think that, well, the judge has made that determination and he's the guy. Well, that's nonsense. The records don't show that. And as a matter of practice, everyone knows that the courts do not do investigations. That's for the police to do. And again, I go back to Sergeant Cheryl Mosse, Rule 30b-6. She's there to testify. Was the processing and booking of Mr. Clements in accordance with county custom policy or practice? She says, yes, it was. We do the same thing again. So all this talk about the warrant verification procedure is, I would submit, respectfully, a red herring. Counsel, we're way over time. Understood. Understood. Thank you. Thank you, counsel. Good morning, Your Honor. Paul Beach for Appellees. I'd like to respond to the first issue raised by Your Honor. Specifically, if the court would the citation to the record is page, excerpts of record, page 213, which reflects that defendant was represented by public defender Brent Montgomery. That's on page 213. And the court's docket is at excerpts of record page 221, which reflects that defendant is present in court and represented by defendant Montgomery, deputy public defender. So maybe as an effective assistance of counsel against his defender. I mean, do we know what he said to him, I'm not the guy? No, we don't. And that's important. What we're talking about here is specifically a Monell claim against a jailer. A jailer, this, he was arrested by Long Beach Police Department and he was ultimately brought to court and the judge remanded him to the sheriff. They settled that suit after our prior decision saying. Yes, Your Honor. Long Beach, they settled out with Long Beach. They're no longer parties to this proceeding. The jailer. They didn't all have one or another kind of immunity, did they? Long Beach? The state claims. Was there an immunity bar for all the state claims? All of the state claims were barred against the county. That was the prior Ninth Circuit opinion. With regard to Long Beach, they settled. So I assume that somebody paid some money. I'm not sure why. But in any event. Well, they arrested the wrong guy. Probably from arresting the wrong guy and keeping him in jail for three weeks. That would be a reason, I would imagine. I wasn't. You're exactly right. And I know there's a lot of matters behind me. I just want to make a couple of brief points specifically, which is here we're talking about a Monell claim against a jailer. Here the jailer received a person and a court order that said hold the prisoner. And from the jailer's perspective, they don't know what goes on in court, why the judge, you know, what arguments were made by the prosecution, what arguments were made by the defense. Just that the judge, for either one of those arguments or for whatever the reason the judge believed, this person should be remanded on no bail, which is what happened. And so that's the first reason why this should be affirmed. The second reason should be, which is. Hold on. I'm looking at 221, which you referred us to. It's kind of cryptic. Yes, Your Honor. Is this some months before when the judge says this fellow, James Clemens, should be arrested and held without bail? No, Your Honor. This is actually the entire document. But I'm specifically referring to the very bottom portion of page 221. It says on 6-2804. That's the date of the hearing after Mr. Clemens was arrested. He was brought to court. That's the court's records of those proceedings. And then the next page over. Hold on. Let me see how to read this. Defendant is present in court and represented by Grandpa Montgomery. I see. Yes. And then in the next page further on in that proceedings of that day's court proceedings, it says custody status remanded to custody. But the second issue, which was raised earlier in the panel, which is this is Minnell. When the guy says, I'm not James, I'm Jerome, I gather they say tell it to the judge. Well, actually, Long Beach arrested him and booked him, and that's on page 206 of the excerpt of the record. They arrested him as Jerome Clemens, a.k.a. James Clemens. That's how he was arrested by Long Beach. I guess they could arrest me and say Andrew Kleinfeld, a.k.a. James Clemens, and I'd sit in jail for three weeks. What is the remedy? Well, there's a couple different remedies. Number one, with regard to the arresting agency, the law is legion that you have to have sufficient cause under the Fourth Amendment to arrest the person on the warrant. Well, they've got a different name, and they've got this really short guy, 5'5". What is the remedy? And those warrant cases, which is those warrant cases, there can be liability under 1983 for those warrant cases. Here we have a – here what's most important is that there's a court order telling the jailers to hold him. But if you go back to the warrant issue, here the eyes match, the hair match, the weight match, the height virtually match. 5'5 and 5'7 virtually matches? Actually, yes. It's pretty close, Your Honor, in these kinds of proceedings. The race match, the gender match, the last names match, and their first names both begin with J, and the birth dates are about a month off. So I should hope none of my cousins do anything bad. Unfortunately, that's the Farrelly case, actually, of the Ninth Circuit, where there was a policy of inaction where there was held liable. And actually, I was one of the counsel in the Farrelly matter, and the county of Los Angeles did their disputed warrant verification process and procedures in order to avoid that very situation. Okay. So now we're down to this policy. This is what concerns me. Okay. So Farrelly says you can't have this weight and C, and the sheriff is liable because that's their policy. So the sheriff creates this new policy, the disputed warrant verification policy. But it doesn't ñ and they write it all up, and it sounds really good, but they don't follow it according to the testimony. Respectfully, Your Honor, the testimony ñ I'm asking you because this is the problem. I mean, you know, the first thing you look at in the now is you look at what is the policy at issue. And the evidence in the record on summary judgment at excerpts of record, page 152 to 154, are that there is a policy and that policy is followed. And the only evidence submitted at summary judgment in opposition to that was during the preceding six years there were, in addition to Mr. Clemens, there were two other instances where the policy supposedly wasn't followed out of all the bookings, and that it wasn't followed. And one of those persons actually preceded the implementation of this policy. So other than Mr. Clemens, the plaintiff on summary judgment to rebut the defendant's showing was only that there was one other person. And under the Minnell law, sporadic or isolated instances ñ that policy wasn't triggered. Well, on summary judgment, there was a disputed evidence as to whether or not he complained at all. The defendant's evidence was that he didn't complain. Okay. We get to the standard again, like we did in the last case. So we have to ñ Clemens is a nonmoving party. We have to view the facts in the light that's favorable to him and all reasonable inferences from that. So there's disputed evidence on whether Clemens did or did not say. I mean, I would tend to believe the person who said I was protesting my innocence. And even if you do believe him, because this is a Minnell claim, it's not material because even if you violated that person's rights, unless it's caused by a policy or practice, then it's not actionable under Minnell. How do you distinguish our holding at page 918 of Fairley v. Lumen? Just explain to me. Suppose we were to write something. What would we say about page 918 of Fairley v. Lumen? It looks as though that's saying that there's a genuine issue of fact that could go to a jury on whether there's a policy or not. Well, in Fairley, was there a policy?  They didn't do anything. I guess what I'm having, I would distinguish Fairley with saying that there was inaction. And where there is under Minnell where there is a policy and it just doesn't work all the time, then you have to look at it and see. I mean, maybe if it didn't work half the time, then maybe someone would be able to create a triable issue on saying, well, you do, you know, your policy doesn't work, so you have a policy of locking people up. Right. And in this record, the only evidence was that over the six years there were, if you believed everybody, there were three instances where it didn't work. The other evidence is that it worked on all of the other occasions. So under Minnell, that's insufficient. What is the policy exactly here to catch people that were arrested on a warrant for somebody else? If a person says, I'm not that person on the warrant, then to further investigate it and then try to remedy if that person really isn't the person, then to seek his release. And who's under the policy? Is the policy in the record? It's articulated at page 152 through 153. And the actual forms which are used are at pages 158 and 159. It's a long checklist that jailors would go through. But, again the And how long does it take to implement that policy to finally determine whether the person is the correct person or not? It would, it could vary upon the circumstances. You might have to track down information from a variety of sources. I see I'm at red, but I'll be happy to stay, but if you want to. We'll see if my colleagues have further questions. Yeah. Well, on that, the sheets that you submitted, Mr. Clement's name isn't on them in that dispute warrant verification policy, right? Correct, Your Honor. It's not on there. So. It's not on the log, because. Their point is, this is our policy, we follow it. Oops, we didn't in this case. And even if that's true, under Minnell, there's no liability. Right. Okay. I understand it. Thank you very much. Thank you, counsel. If I have just 30 seconds, I'll keep it in 30 seconds. All right. With regard to the claim that the sheriff did not know what happened inside the courtroom with the judge, the sheriff's department provides the bailiff services for all the courts in Los Angeles County. That's a matter of. The what? The sheriff's department provides the bailiffs for all of the courts in Los Angeles County. They had bailiffs. So they're supposed to be listing the cases, they're supposed to be looking at prisoners and making sure that no one, you know. And making sure that no one attacks the judge and all of that. But they're supposed to be like the court reporter. I'm just saying they have the means to have access to that information. The next point. Excerpt of record, page. Past 30 seconds. You asked me a question? Excerpt of record. Pages 77 and 78, paragraphs 9 to 10, my declaration. I went through the records, the computer records of the county. They produced only 5% of prisoners' complaints. Thank you, counsel. All right. Check. Thank you. Clemens v. City of Long Beach is submitted. And we'll hear Hansen v. Zenon pictures.
judges: Kleinfeld, Wardlaw, Callahan